# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of David J. Gundling, Respondent.

Appellate Case No. 2023-001046

---

Opinion No. 28195
Submitted February 21, 2024 – Filed March 13, 2024

---

### DISBARRED

---

Disciplinary Counsel William M. Blitch, Jr., Deputy
Disciplinary Counsel Ericka M. Williams, and Assistant
Disciplinary Counsel Jeffrey I. Silverberg, all of
Columbia, for the Office of Disciplinary Counsel.

Desa Ballard, of Ballard & Watson, of West Columbia,
for Respondent.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  In the Agreement, Respondent admits misconduct, agrees to pay costs, and consents to the imposition of any sanction set forth in Rule 7(b), RLDE, Rule 413, SCACR.  We accept the Agreement and disbar Respondent from the practice of law in this state, retroactive to the date of his interim suspension.  The facts, as set forth in the Agreement, are as follows.

# I.

Respondent was admitted to practice law in South Carolina in 1984. He has no prior disciplinary history. The Agreement in this case involves two separate disciplinary complaints.

## Matter A

In 2016, Respondent prepared a revocable trust (Trust) for Client A. The Trust Agreement provided that, upon Client A's death, the Trust would be used for exclusively charitable purposes, and Respondent was named Trustee of the Trust. The Trust Agreement also identified several specific charitable organizations as beneficiaries and allowed the Trustee to choose additional charitable organizations located in Horry and Georgetown Counties to receive contributions in the amount of $5,000. The Trust Agreement also specifically provided that the Trustee is prohibited from using either the Trust or its assets for personal gain.

Upon the death of Client A in 2018, Respondent became Trustee of the Trust, and billed the Trust for his services and expenses through his law firm. Over the next year, Respondent transferred funds from the Trust's brokerage account into his law firm's escrow account and made charitable distributions and paid taxes on behalf of the Trust. Beginning in April 2020, Respondent made a series of six distributions from the Trust to pay tuition for his daughter's attendance at a school in Alabama (School) that conducted a long-term treatment program for girls with mental health and behavioral issues. In making the initial payment to the School, Respondent misrepresented to the admissions coordinator that he had received a grant from a trust to pay his daughter's tuition. Over the next twelve months, Respondent made six separate payments from the Trust totaling $52,000 to fund his daughter's attendance at the School. In the process of transferring the funds from the Trust's brokerage account, Respondent instructed his staff to prepare invoices that misrepresented the purpose for which the transferred funds would be used. Respondent admits he knew at the time that this money was not his to spend for personal expenses and that using the Trust's funds to pay his daughter's tuition violated both the terms of the Trust and the fiduciary duties he owed to the Trust and its beneficiaries.

In late 2020, Respondent determined the Trust would benefit from investing in real estate, given the volatility in the stock market at the time. Respondent began

identifying potential investment properties and invited his son to join him in looking at several properties in the Charleston area. On October 28, 2020, Respondent, on behalf of the Trust, entered a contract to purchase a townhome (Townhome). Respondent subsequently assigned the real estate contract to his son and agreed to loan his son $270,000 from the Trust to fund the purchase of the Townhome. On December 3, 2020, Respondent's son granted a mortgage to the Trust and signed a promissory note in the amount of $270,000, which represented the full purchase price for the Townhome, along with interest at 3.00%. Respondent admits his son would not have qualified for 100% financing from a traditional mortgage lender. Respondent served as the closing attorney for the purchase transaction for the Townhome, representing both his son and the Trust. Respondent did not advise his son of the desirability of seeking independent counsel concerning the terms of the loan from the trust or obtain informed consent from his son regarding the existence of a concurrent conflict of interest. Respondent did not accept attorney's fees for handling the closing transaction, but he did accept a commission in the amount of $6,750 for serving as the real estate broker.[1] Respondent admits he directly benefitted from this transaction involving the Trust's assets and that his use of Trust funds to finance his son's purchase of the Townhome constituted a breach of his fiduciary duty owed to the Trust and its beneficiaries.

After closing the transaction on the Townhome, Respondent did not monitor the loan to ensure his son was making timely payments. In December 2021, Respondent learned his son had missed two monthly loan payments and gave his son money towards the outstanding balance. Respondent considered having his son refinance the loan on the Townhome so the Trust would no longer serve as the mortgagee; however, due to a rise in interest rates, Respondent's son was unable to afford monthly payments on a new loan, and Respondent's son decided to sell the Townhome. In April 2023, Respondent's son sold the Townhome for $375,000—a total of $105,000 more than the Townhome's initial purchase price. Respondent's son repaid the Trust from the proceeds of this sale.

During the summer of 2021, Respondent's real estate paralegal confronted him about the payments the Trust had made to the School for his daughter's tuition and

---

[1] Respondent is the sole owner of a real estate brokerage company, North Inlet Realty, LLC. The commission check was issued to this entity. The commission was paid from the seller's closing proceeds.

the propriety of the Trust loaning money to Respondent's son to purchase the Townhome. The paralegal was particularly concerned that she could get in trouble for assisting with the closing on the Townhome. Respondent informed the paralegal he knew he had to repay the money and that he was taking steps to do so. In October 2021, the paralegal advised Respondent that she intended to resign and that her primary concern was that she believed Respondent's use of Trust funds was inappropriate and she was concerned she might get in trouble because she had some knowledge of Respondent's actions. Soon thereafter, Respondent disclosed his conduct to his law partners and self-reported his conduct to ODC on November 30, 2021. Respondent's paralegal retained her position with the law firm.

Prior to submitting his self-report, Respondent executed individual promissory notes for each of the six disbursements he made to the School for his daughter's tuition, charging himself 3.25% interest, which he admits was below market rate. Respondent subsequently repaid the Trust a total of $54,136.28 on the $52,000 he misappropriated. Respondent also discovered that he overbilled the Trust a total of $1,060 for his services as Trustee, and this amount was reimbursed by Respondent's law firm.[2] By order dated December 13, 2021, Respondent was placed on interim suspension following his self-report. *In re Gundling*, 436 S.C. 200, 871 S.E.2d 882 (2021).

*Matter B*

Prior to 2008, Respondent represented Wife and Husband in several legal matters. As a result of the economic recession in 2008, Wife and Husband, who owned several investment properties, began experiencing financial hardship, and creditors obtained adverse judgments in various debt collection actions. Several of the couple's properties, including their personal residence, went into foreclosure, and Respondent represented Wife and Husband in many of the foreclosures and other actions. Respondent failed to timely serve and file an answer on behalf of Wife and Husband in a 2014 foreclosure action.

On several occasions in the fall of 2015, Wife approached Respondent for money

---

[2] Respondent explains that he billed his time at his regular hourly rate of $300 instead of the $200 hourly rate permitted by the terms of the Trust Agreement. Respondent maintains this was inadvertent and a result of the default settings in the law firm's billing software.

claiming she and her husband did not have enough money to buy food. Respondent initially refused the requests because he did not have the money to lend, and he did not want to loan the couple money as they owed him approximately $45,000 in legal fees that had remained unpaid for some time. However, Wife continued to approach Respondent for financial assistance. Wife advised that her husband, who was a physician, was leaving his practice and would have access to funds in January 2016. Based on Wife's representations, Respondent encouraged his daughter to loan Wife money from settlement proceeds his daughter had recovered in connection with a motor vehicle accident. Respondent's daughter agreed to make two separate loans to Wife and Husband in the amounts of $5,000 and $9,000, with specified amounts of interest and late payment fees set forth in the promissory notes. Respondent represented his daughter in both loan transactions and failed to obtain informed consent, confirmed in writing from Wife, Husband, or Respondent's daughter concerning the concurrent conflict of interest. In January 2016, Respondent had Wife and Husband sign a third promissory note in the amount of $1,600 to Respondent's law firm. Respondent did not advise Wife and Husband in writing of the desirability of seeking the advice of independent legal counsel concerning the transaction, nor did Respondent give Wife and Husband a reasonable opportunity to seek the advice of independent legal counsel concerning the transaction. Respondent also did not disclose in writing his role in the transaction, including whether he represented Wife and Husband.

Wife and Husband failed to repay any of the loans in full. After several unsuccessful attempts to collect on the notes, Respondent retained another attorney to bring two separate lawsuits against Wife and Husband, one on behalf of his law firm and the other on behalf of his daughter. Wife and Husband filed a third-party complaint against Respondent in his daughter's lawsuit, alleging, among other things, that Respondent engaged in legal malpractice by having his clients execute a promissory note in favor of his law firm. Respondent filed notices of appearance in both lawsuits and took an active role in litigating both actions as the attorney for himself, his law firm, and his daughter. The cases were eventually settled with Wife and Husband paying a total of $5,000, which was disbursed to Respondent's daughter.

## II.

As to Matter A, Respondent admits that, as Trustee, he provided "law related

services" to the Trust pursuant to Rule 5.7(a), RPC, Rule 407, SCACR (providing a lawyer is subject to the Rules of Professional Conduct with respect to the provision of law-related services). Respondent also admits that he violated subsections (a) and (g) of Rule 1.15, RPC, in failing to safekeep the Trust's funds in his trust account and by making unauthorized distributions to fund his daughter's tuition payments. Respondent admits he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(d), RPC, by: (1) misrepresenting to the School that he received a grant from a trust to pay his daughter's tuition; (2) having his paralegal prepare invoices that misrepresented the purpose for which Trust funds would be used; and (3) misrepresenting to the Trust's investment advisor that he was using the $270,000 to invest in real estate rather than as a mortgage loan to his son. Respondent admits that he violated Rule 1.7, RPC, by representing both the Trust and his son in the mortgage loan transaction without obtaining informed consent, confirmed in writing, from each client. Respondent also admits that, through his admitted breaches of fiduciary duty as Trustee of the Trust, he violated the following provisions of the Rules for Professional Conduct, Rule 407, SCACR: Rule 8.4(a) (prohibiting violations of the Rules of Professional Conduct); Rule 8.4(d) (prohibiting conduct involving dishonesty fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).

As to Matter B, Respondent admits that by failing to timely serve and file an answer on behalf of Wife and Husband in the 2014 foreclosure action, he violated Rule 1.1, RPC (requiring competence) and Rule 1.3, RPC (requiring diligence). Respondent also admits he violated Rule 1.7, RPC, by representing his daughter in the two loan transactions with Wife and Husband without obtaining informed consent, confirmed in writing, from each client concerning the concurrent conflict of interest. Respondent admits he violated subsections (a) and (e) Rule 1.8, RPC (prohibiting certain business transactions with clients and prohibiting a lawyer from providing financial assistance to a client) by having his law firm make a loan to Wife and Husband while Respondent represented the couple in ongoing litigation. Respondent also admits that by having his daughter make loans to Wife and Husband while Respondent represented the couple in ongoing litigation, he violated subsections (a) and (e) of Rule 8.4, RPC (prohibiting violations of the Rules of Professional Conduct and conduct prejudicial to the administration of justice).

Respondent admits his conduct is grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (providing a violation of the Rules of Professional Conduct is a ground for discipline); and Rule 7(a)(5) (providing conduct tending to bring the legal profession into disrepute or conduct demonstrating unfitness to practice law is a ground for discipline). Respondent agrees to the imposition of any sanction set forth in Rule 7(b), RLDE, agrees to pay costs, and agrees to complete the Legal Ethics and Practice Program Ethics School prior to seeking reinstatement.

In his affidavit in mitigation, Respondent takes responsibility for his misconduct and expresses remorse for his actions. He also emphasizes: (1) he self-reported his misconduct; (2) he has no prior disciplinary history; (3) the trust corpus increased in value from $2.1 million to $3.1 million during his tenure as trustee; (4) the severity and treatment-resistance of his teenage daughter's longstanding mental health and behavioral issues[3] and his stress-related heart attack in July 2021 underlying his "lapse in judgment"; (5) his belief that the mortgage loan to his son was a good investment for the trust; (6) his resignation as trustee; (7) his payment of restitution; and (8) his good reputation in the community as demonstrated through seventeen letters submitted on his behalf by friends, clients, and colleagues. In light of these factors, Respondent requests that the Court consider imposing a three-year definite suspension retroactive to the date of his interim suspension as a sanction for his admitted misconduct.

### III.

We find Respondent's conduct warrants disbarment. *See In re Wern*, 431 S.C. 643, 649, 849 S.E.2d 898, 901 (2020) (disbarring an attorney for misappropriation of client funds and observing "[t]his Court has never regarded financial misconduct lightly, particularly when such misconduct concerns expenditure of client funds or other improper use of trust funds" (citation and quotations omitted)). We therefore accept the Agreement and disbar Respondent from the practice of law in this state retroactive to December 13, 2021—the date Respondent was placed on interim suspension.

---

[3] Respondent and his wife adopted twin daughters as infants, and one of the twins has experienced severe physical, mental, and emotional issues throughout her life.

Within fifteen (15) days of the date of this opinion, Respondent shall surrender his Certificate of Admission to the Practice of Law to the Clerk of Court. Within thirty days of the date of this opinion, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct. Prior to filing any petition seeking reinstatement, Respondent shall complete the Legal Ethics and Practice Program Ethics School.

**DISBARRED.**

**BEATTY, C.J., KITTREDGE, FEW, JAMES, and HILL, JJ., concur.**